JOURNAL ENTRY AND OPINION
A jury found defendant David Minello guilty of speeding and driving while intoxicated. In this appeal, he claims the court denied him due process of law by refusing to enforce his discovery requests and by overruling his motion to suppress evidence.
A village of Mayfield police officer on traffic duty on I-271 clocked defendant's car traveling ninety miles per hour in a sixty mile per hour zone. The officer pulled defendant's vehicle over and immediately noticed a strong odor of alcohol. The officer described defendant as having a deranged appearance, red, glassy eyes, just seemed a bit confused in the car.
 I
The first assignment of error raises several issues relating to a claimed denial of due process.
 A
Defendant first claims the court denied him due process of law by (1) refusing to grant him a hearing on his administrative license suspension and (2) refusing to grant him occupational driving privileges pending trial on the drunk driving charge. He maintains the court refused to grant the driving privileges as a means of pressuring him to plead to the charges. The village concedes the court failed to conduct the administrative license suspension hearing, but claims that any error would be harmless because the court credited the time served on the administrative license suspension to the license suspension ordered as part of the sentence for the drunk driving charge.
In Mayfield Heights v. Buckner (Oct. 3, 1996), Cuyahoga App. No. 69221, unreported, we addressed an identical argument. While agreeing that the court erred by failing to grant Buckner the administrative license suspension appeal within the statutorily allotted time, we nonetheless found no substantial prejudice because the court credited the administrative license suspension against a suspension ordered for the drunk driving charge.
As in Buckner, the court here granted defendant credit for time served on the administrative license suspension. While we cannot condone any practice that deprives drivers of their rights to speedy administrative license appeals, absent substantial prejudice, we see no grounds for reversal.
Defendant also makes the argument that the court refused to grant him occupational driving privileges as a means of coercing a guilty plea. An argument that calls into question the scruples of the trial court requires substantiation and none is provided. Without more, we can find no error or irregularity.
 B
Defendant next complains the court violated his right to due process by failing to grant his motion to compel the village to produce calibration log books. Defendant requested the calibration logs for the previous three years. The village possessed the logs, but only permitted defense counsel to examine calibration logs for the previous year. Defendant claims he needed to examine all the logs in order to determine whether the breathalyzer had been improperly calibrated with an outdated calibration solution.
Ohio Admin. Code 3701-53-01(A) requires that the results of calibration tests be retained for not less than three years. The failure to record calibration logs for the mandatory three year period is grounds for suppressing evidence of a breathalyzer test. See, e.g., State v. Hominsky (1995), 107 Ohio App.3d 787; State v. Griffin (Sept. 21, 1988), Summit App. No. 13551, unreported.
Civ.R. 26(B)(1) provides that parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. The courts permit discovery of calibration logs. See, e.g., State v. McCann (July 23, 1993), Licking App. No. CA-92-103, unreported; State v. Brocco (May 21, 1999), Lake App. No. 98-L-056, unreported. By law, the village is required to maintain those logs, so it should not have been onerous for the village to permit inspection of those logs.
Ultimately, however, we cannot say that the court abused its discretion by failing to permit discovery of the logs because the logs would have been irrelevant under the circumstances. In an amended response to discovery, the village submitted documentation showing that the breathalyzer used to test defendant's breath had been recalibrated by the manufacturer in July 1997 thirteen months before defendant's arrest. Because there is no argument that the July 1997 recalibration had been done inaccurately, the only relevant calibration logs would be those compiled subsequent to July 1997. Cf. State v. Brandenstein (Dec. 30, 1999), Cuyahoga App. No. 98 BA 30, unreported (calibration performed prior to calibrations performed by State Highway Patrol were of little relevance when the first calibration did not reveal inaccuracies).
 C
Finally, defendant complains the court violated his right to due process of law by refusing to accept his no contest plea and forcing the matter to go to trial. Defendant maintains he offered to plead no contest to the charges, but the court refused the plea and forced him to go to trial as a means of exerting economic pressure on him to plead guilty and avoid a trial. He claims the error is particularly egregious since the court had previously indicated that it would entertain a no contest plea.
The court has no obligation to accept a no contest plea to a serious misdemeanor offense. See Crim.R. 11(D). Defendant's proffer of no contest plea stated that he would plead no contest to the charge of driving while intoxicated, but that proffer did not include any agreement to plead to the speeding violation or the driving while under the influence charge. Moreover, the proffer came at the eleventh hour, just one day before trial. Given these facts, we cannot say the court abused its discretion by rejecting the proposed no contest plea. The first assignment of error is overruled.
 II
The second assignment of error raises issues relating to the court's refusal to suppress the results of the breath test. Defendant claims the village used an outdated calibration sample and that the arresting officer's reasons for stopping him were pretext.
 A
A defendant may claim that the results of a breath test should be excluded: (1) because the State failed to comply with regulatory protocols issued by the Department of Health that govern breath-test procedures; or (2) because some fact existed that rendered the results of the breath test inaccurate, unreliable, or otherwise invalid under the Ohio Rules of Evidence. State v. French (1995), 72 Ohio St.3d 446,451-452.
Defendant based part of his motion to suppress the evidence of the breath test on a June 12, 1997 letter written by the Ohio Department of Health and sent to law enforcement agencies using Guth Simulator Solution Batches 95400 and 96130. As relevant here, the letter recommended that breath test machines using batch or lot number 96130 instrument solution cease using that batch. The letter noted that questions had arisen concerning the stability of batch 96130, so the Department of Health was recommending that the batch not be used after its expiration date of June 20, 1997. The court found that for some reason, the village continued to use batch 96130 after receiving this letter, using it to calibrate the Data Master machine used to test defendant nearly fourteen months later on August 6, 1998.
Ohio Adm. Code 3701-53-04 states in relevant part:
 (1) * * * An instrument check solution approved by the director after the effective date of this rule shall not be used after the manufacturer's expiration date but in no event shall the solution be used more than three years after its date of manufacture, notwithstanding the manufacturer's expiration date. (emphasis added).
Although Ohio Adm. Code 3701-53-04(1) would ordinarily invalidate batch 96130, that provision did not take effect until July 7, 1997, and specifically stated that it applied only to solutions approved by the director of the department of health after its effective date. Because batch 96130 had been approved prior to the effective date of the administrative code section, that section did not apply.
We recently addressed a similar argument concerning the applicability of Department of Health administrative regulations promulgated after-the-fact in Rocky River v. Papandreas (Mar. 23, 2000), Cuyahoga App. No. 76132, unreported. Papandreas took a breath test that came back with an invalid sample error. After waiting five minutes, the police retested Papandreas. On appeal, Papandreas argued that subsequently implemented administrative regulations called for an additional twenty-minute wait between an invalid sample error and retest. We rejected an argument that the guidelines should be applied retroactively, noting that the Department of Health's regulation did not undermine the validity of prior testing procedures, but merely set forth new rules in an abundance of caution. The same reasoning in Papandreas applies here.
Moreover, nothing in the June 12, 1997 letter suggests that the use of batch 96130 would yield improper results. Indeed, the letter pointed out that then-current regulations did not require any expiration date on batch 96130, but the limited data available to the Department of Health suggested batch 96130 had a significantly longer stability than the proposed expiration date. The Department of Health noted it suggested discarding the solution in order to be consistent with the proposed regulation.
The import of this letter was that the Department of Health was only recommending replacing the batch solution after the expiration date in order to be consistent with the newly proposed regulations not because the data showed that the solution would be compromised by age. This is not a case where the Department of Health had significant concerns about the integrity of batch 96130, and we refuse to read the regulation as suggesting that there had been any question about the integrity of batch 96130. Since Ohio Adm. Code 3701-53-04 was not in effect at the time, and there has been no showing that age would compromise the integrity of the batch solution, we find the court did not err by refusing to suppress the evidence of the breath test taken on a machine calibrated with batch 96130.
Defendant also cites to State v. Miller (Dec. 15, 1998), Marion App. No. 9-98-42, unreported, for the proposition that breath tests used on machines calibrated with batch 96130 are invalid because the concentration of the batch was not established through the use of proper scientific methods. He maintains Miller dictates that any breath test used with batch 96130 is invalid.
Without passing judgment on Miller, we find defendant failed to present this argument in a proper fashion. In order to require a hearing on a motion to suppress evidence, the accused must state the motion's legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided. State v. Shindler (1994), 70 Ohio St.3d 54, 636 N.E.2d 319, syllabus; Xenia v. Wallace (1988), 37 Ohio St.3d 216, 524 N.E.2d 889, paragraph one of the syllabus. A defendant's failure to adequately raise the basis of his challenge constitutes a waiver of that issue on appeal. Xenia v. Wallace, supra, at 218; Bryan v. Fox (1991), 76 Ohio App.3d 607, 610,602 N.E.2d 753.
At no point, either by motion or during the suppression hearing itself, did defendant raise the holding in Miller as grounds for suppression. The only argument relating to batch 96130 centered on the Department of Health's June 12, 1997 letter concerning the expiration date of batch 96130. Absent notice of an intent to argue the issues raised in Miller, defendant is deemed to have waived the right to argue this point on appeal.
 B
Defendant next argues that the arresting officer lacked probable cause to conduct field sobriety tests. He maintains the arresting officer made a snap decision to find defendant intoxicated even before field sobriety tests had been performed.
The Supreme Court of Ohio has held that stops based on minor traffic violations do not violate the Fourth Amendment. In Dayton v. Erickson (1996), 76 Ohio St.3d 3, the syllabus states:
 Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer has some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity.
The arresting officer clocked defendant traveling ninety miles per hour in a sixty mile per hour speed zone. Under any rational view of the law, the officer validly pulled defendant over.
As to having probable cause to conduct field sobriety tests, all that is required is a reasonable suspicion of criminal activity. Columbus v. Anderson (1991), 74 Ohio App.3d 768, 770; State v. Sanders (1998),130 Ohio App.3d 789, 794. The arresting officer testified that he smelled a strong odor of alcohol, noticed defendant had a deranged appearance, red, glassy eyes, just seemed a bit confused in the car. These indicia are sufficiently valid criteria for conducting field sobriety tests.
Once the officer had probable cause to conduct field sobriety tests, defendant's poor performance on those tests could constitute cause to arrest. The arresting officer testified that defendant failed the alphabet test and the Horizontal Gaze Nystagmus test, and that he became argumentative during the testing. Assuming strict compliance with these sobriety tests (a claim not made in this appeal), a driver's failure of sobriety tests, coupled with other indicia of driving under the influence, establishes sufficient cause for arrest. See State v. Homan (2000), 89 Ohio St.3d 421, paragraph one of the syllabus.
 C
Defendant next complains the court erred by refusing to suppress a videotape of the stop and arrest in this case. Defendant argues the playing of the videotape at trial violated his right to remain silent.
The courts have consistently rejected the idea that police must first read a suspect Miranda rights before conducting field sobriety tests since roadside questioning of a motorist pursuant to a routine traffic stop does not ordinarily constitute custodial interrogation requiring Miranda warnings. See, e.g., Berkemer v. McCarty(1984), 468 U.S. 420; State v. Feasel (1988), 41 Ohio App.3d 155, 157; North Royalton v. Smythe (May 13, 1999), Cuyahoga App. No. 74029, unreported; Cleveland v. Criss (Dec. 10, 1998), Cuyahoga App. No. 72862, unreported; State v. Pelz (Nov. 5, 1998), Cuyahoga App. No. 73654, unreported.
In City of Fairview Park v. Hejnal (Jan. 19, 1995), Cuyahoga App. No. 67506, unreported, we followed Berkemer, recognizing that Miranda warnings are not required prior to mere roadside questioning after a routine traffic stop:
 In Berkemer v. McCarty (1984), 468 U.S. 420, 82 L.Ed.2d 317, 104 S.Ct. 3138, the United States Supreme Court ruled that the roadside questioning of a motorist detained pursuant to a routine traffic stop does not constitute custodial interrogation for the purposes of the Miranda rule. See Ohio v. Senedak (June 21, 1989), Mahoning App. No. 88 C.A. 160, unreported. The Berkemer court noted that although an ordinary traffic stop curtails the freedom of action of the detained motorist and imposes some pressures on the detainee to answer questions, such pressures do not sufficiently impair the detainee's exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights. Berkemer at 421. The Court stated that "* * * In short, the atmosphere surrounding an ordinary traffic stop is substantially less police dominated than surrounding kinds of interrogation at issue in Miranda itself, * * *" 468 U.S. at 438-439. "* * * the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." Id. Paragraph two of the syllabus.
Any statements defendant made before he had been arrested would not be subject to a Fifth Amendment right against self-incrimination. That being the case, a videotape of those statements would be admissible, just as if the officer had testified to those statements.
We reject any idea that the officer had to inform defendant that the stop was being videotaped. Because no Fifth Amendment rights had attached at the time of the stop, the officer would need no more permission to videotape the stop than he would to photograph the scene. Because no right against self-incrimination had attached at that point, the officer had no duty to inform defendant that the stop would be videotaped.
 D
Lastly, defendant claims the court erred by not suppressing evidence relating to the speeding charge because the arresting officer gave no testimony concerning the posted rate of speed and further testified that he shot the radar through the rear window of the cruiser.
The arresting officer testified that sixty miles per hour was the speed limit on the stretch of interstate highway where defendant committed his speeding offense. See Suppression Hearing Tr. 49.
In addition, the arresting officer gave a full account of his training in using the radar gun. Defendant points to no authority for the proposition that a valid radar gun reading cannot be obtained by shooting the radar through a window. The second assignment of error is overruled.
 III
In his third assignment of error, defendant complains the court violated his right to a speedy trial. Defendant admits he signed a form waiving his right to a speedy trial, but claims he did not intend to waive the right to a speedy trial on all charges, and subsequently revoked that waiver.
The record shows that defendant executed a waiver of his right to a speedy trial on August 10. 1998. The court convened the suppression hearing on November 12, 1998. At the close of that day's testimony, defense counsel told the court:
 I don't believe my client ever waived his speedy trial rights. If he has, he certainly withdraws any waiver of the speedy trial rights he's been granted because the delay in getting this matter to a resolution is obviously impinging upon his constitutional right to due process.
In State v. O'Brien (1987), 34 Ohio St.3d 7, paragraph two of the syllabus states:
 Following an express, written waiver of unlimited duration by an accused of his right to a speedy trial, the accused is not entitled to a discharge for delay in bringing him to trial unless the accused files a formal written objection and demand for trial, following which the state must bring the accused to trial within a reasonable time.
Defendant did not file a formal, written objection and demand for trial, so his attempt to do so orally during the suppression hearing was futile. See State v. Cook (May 8, 2000), Warren App. No. CA99-10-126, unreported. The third assignment of error is overruled.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Lyndhurst Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, J., CONCURS.
DIANE KARPINSKI, P.J., WITH SEPARATE CONCURRING OPINION.